UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :       <u>UNDER SEAL</u>

    - v -                        :       <u>INDICTMENT</u>

TAHIR ALI KHAN,                     :       S1 07 Cr. 711
      a/k/a "Waheed Khan,"
      a/k/a "Ali,"                  :
      a/k/a "Haji,"
      a/k/a "Shan,"                 :
FAYYAZ AHMED,
ARIE BENSHIMON,                     :
      a/k/a "the Jew,"
      a/k/a "Jewish Guy,"           :
NAVEED ALI BHINDAR,
      a/k/a "Sheikh,"               :
SYED HASSAN,
MUHAMMAD ISHAQ,                     :
      a/k/a "Saqa,"
BASHARAT JARRAL,                    :
      a/k/a "Alex,"
NADEEM KHAN,                        :
GHULAM MEHMOOD,
      a/k/a "Mama,"                 :
      a/k/a "Zafar,"
SHAHEEN MUKHTAR,                    :
      a/k/a "Nick,"
QAISER QURESHI,                     :
      a/k/a "Auntie,"
FRANKLIN RODRIGUEZ,                 :
      a/k/a "Spanish Guy,"
      a/k/a "Chancey,"             :
SYED SHAH,
      a/k/a "Charsi,"              :
      a/k/a "Chotu,"
      a/k/a "Joji,"               :
OSCAR SANCHEZ,
      a/k/a "Charsi,"              :
      a/k/a "Bank of America,"
PRADIPT SHARMA,                     :
      a/k/a "the CitiBank guy,"
                              :
               Defendants.
                              :
- - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: AUG 1 3 2007

COUNT ONE

(Conspiracy to Commit Identification Document Fraud)

The Grand Jury charges:

1.    From in or about January 2005 through in or about August 2007, in the Southern District of New York and elsewhere, TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali," a/k/a "Haji," a/k/a "Shan," FAYYAZ AHMED, ARIE BENSHIMON, a/k/a "the Jew," a/k/a "Jewish Guy," MUHAMMAD ISHAQ, a/k/a "Saqa," NADEEM KHAN, GHULAM MEHMOOD, a/k/a "Mama," a/k/a "Zafar," SHAHEEN MUKHTAR, a/k/a "Nick," QAISER QURESHI, a/k/a "Auntie," OSCAR SANCHEZ, a/k/a "Charsi," a/k/a "Bank of America," SYED SHAH a/k/a "Faisal," a/k/a "Chotu," a/k/a "Joji," and PRADIPT SHARMA, a/k/a "the Citibank guy," the defendants, and others known and unknown, unlawfully, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit violations of Title 18, United States Code Section 1028.

The Objects of the Conspiracy

2.    It was a part and an object of the conspiracy that TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali," a/k/a "Haji," a/k/a "Shan," FAYYAZ AHMED, ARIE BENSHIMON, a/k/a "the Jew," a/k/a "Jewish Guy," MUHAMMAD ISHAQ, a/k/a "Saqa," NADEEM KHAN, GHULAM MEHMOOD, a/k/a "Mama," a/k/a "Zafar," SHAHEEN MUKHTAR, a/k/a "Nick," QAISER QURESHI, a/k/a "Auntie," OSCAR SANCHEZ, a/k/a "Charsi," a/k/a "Bank of America," SYED SHAH a/k/a

"Faisal," a/k/a "Chotu," a/k/a "Joji," and PRADIPT SHARMA, a/k/a "the Citibank guy," the defendants, and others known and unknown, unlawfully, willfully and knowingly would and did produce, in and affecting interstate and foreign commerce, without lawful authority, identification documents, authentication features, and false identification documents, in violation of Title 18, United States Code, Section 1028(a)(1), (b)(1)(A), (c)(1) and (c)(3)(A).

3.    It was further a part and an object of the conspiracy that TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali," a/k/a "Haji," a/k/a "Shan," FAYYAZ AHMED, ARIE BENSHIMON, a/k/a "the Jew," a/k/a "Jewish Guy," MUHAMMAD ISHAQ, a/k/a "Saqa," NADEEM KHAN, GHULAM MEHMOOD, a/k/a "Mama," a/k/a "Zafar," SHAHEEN MUKHTAR, a/k/a "Nick," QAISER QURESHI, a/k/a "Auntie," OSCAR SANCHEZ, a/k/a "Charsi," a/k/a "Bank of America," SYED SHAH a/k/a "Faisal," a/k/a "Chotu," a/k/a "Joji," and PRADIPT SHARMA, a/k/a "the Citibank guy," the defendants, and others known and unknown, unlawfully, willfully and knowingly would and did transfer, possess and use, in and affecting interstate and foreign commerce, without lawful authority, means of identification of other persons with intent to commit, and to aid and abet, and in connection with, unlawful activity that constitutes a violation of Federal law, and that constitutes a felony under applicable State and local laws, and as a result, would and did obtain things of value aggregating $1,000 and more during a one-year

3

period, in violation of Title 18, United States Code, Section 1028(a)(7), (b)(1)(A)&(D), and (c)(3)(A).

<u>The Means and Methods of the Conspiracy</u>

4.    Among the means and methods by which TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali," a/k/a "Haji," a/k/a "Shan," FAYYAZ AHMED, ARIE BENSHIMON, a/k/a "the Jew," a/k/a "Jewish Guy," MUHAMMAD ISHAQ, a/k/a "Saqa," NADEEM KHAN, GHULAM MEHMOOD, a/k/a "Mama," a/k/a "Zafar," SHAHEEN MUKHTAR, a/k/a "Nick," QAISER QURESHI, a/k/a "Auntie," OSCAR SANCHEZ, a/k/a "Charsi," a/k/a "Bank of America," SYED SHAH a/k/a "Faisal," a/k/a "Chotu," a/k/a "Joji," and PRADIPT SHARMA, a/k/a "the Citibank guy," the defendants, and their co-conspirators, would and did carry out the conspiracy were the following:

a.    The defendants and their co-conspirators produced false identification documents purporting to have been issued by state and federal government authorities, including driver's licenses, resident alien cards, social security cards, and tax identification documents.

b.    The defendants produced false identification documents in the names of fraudulent identities, which the defendants referred to as "chickens" (in Punjabi, "murghia").

c.    The defendants sought to build financial credit for the fraudulent identities by, among other things, fraudulently establishing bank accounts, credit card accounts,

4

apartment leases, and telephone and utility accounts in the name of the "chickens."

d.    The defendants applied for and obtained lucrative bank loans, home mortgage loans, credit cards, increased credit card limits, and other financial benefits in the name of the "chicken" identities or in the name of sham businesses supposedly operated by those fraudulent identities.

e.    The defendants and their co-conspirators intentionally defaulted on the loans and credit card debt in the "chicken" names -- causing millions of dollars of losses to numerous financial institutions.

<u>Overt Acts</u>

5.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    In or about January 2005, FAYYAZ AHMED, the defendant, gave TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali," a/k/a "Haji," a/k/a "Shan," the defendant, a passport-sized photograph of himself to use in producing two fake New York State driver's licenses in the names of "Mumtaz Lodhi" and "Munir Lodhi," bearing AHMED's photograph.

b.    On or about January 26, 2005, AHMED presented a fake New York driver's license in the name of "Mumtaz Lodhi,"

bearing his photograph, at a Lowe's store in New Jersey, while attempting to purchase $10,000 in gift cards with a credit card in the name of "Mumtaz Lodhi."

c.   In or about April 2006, a co-conspirator not named as a defendant herein ("CC-1"), posed as "Tariq Mehmood" at a real estate closing for property located in Port Jefferson, New York, and presented a fake New York driver's license in the name of "Tariq Mehmood," bearing his photograph.

d.   On or about October 2, 2006, while discussing the production of a fake identification, GHULAM MEHMOOD, a/k/a "Mama," a/k/a "Zafar," the defendant, told CC-1 to "give me a photo of someone so I can put a beard on and open up a new account."  CC-1 agreed to do so.

e.   On or about October 12, 2006, while discussing the production of a fake identification, MEHMOOD asked MUHAMMAD ISHAQ, a/k/a "Saqa," the defendant, "Did you do the new I.D.?," to which ISHAQ responded that he would make it.  MEHMOOD told ISHAQ to "change the picture as well," and ISHAQ responded "no problem."

f.   On or about October 14, 2006, MEHMOOD met with a co-conspirator in Manhattan, to pay that person money for use of the identity "Ahmed Imtiaz."

g.   On or about October 30, 2006, while discussing the production of a fake identification, SHAHEEN

MUKHTAR, a/k/a "Nick," the defendant, told TAHIR ALI KHAN that he needed the "license" of "Mir" [i.e., "Mohammad Mir," one of the fake "chicken" identities used by the defendants] for an upcoming real estate closing.  MUKHTAR gave KHAN his fax number in New Jersey to fax the license to once it was made.

        h.  On or about November 4, 2006, in a telephone call, TAHIR ALI KHAN told MEHMOOD that they needed to make an identification document for "Mohammad Mir."  MEHMOOD informed KHAN that he could not find anyone to use for the picture of "Mir."  KHAN and MEHMOOD decided to use "Baba" for the picture, but to have "Baba" dye his hair black and shave his mustache. KHAN stated that he would "make" the license and mail it to MUKHTAR.

        i.  On or about November 9, 2006, while discussing the production of a fake identification, MUKHTAR told TAHIR ALI KHAN that he needed "social papers for Mir" and that KHAN needed to resend Mir's license because the "ID" that came in the fax "wasn't clean."  KHAN said he would give MUKHTAR the password for an internet account so MUKHTAR could "take it out of the system."

        j.  On or about November 10, 2006, while discussing the production of a fake identification, TAHIR ALI KHAN informed MUKHTAR that he was having a problem "making the 9 numbers" (i.e., the social security card) because he couldn't

7

find an "M" anywhere, but that he would try using a "W" and turning it upside down.

k.    On or about November 10, 2006, ARIE BENSHIMON, a/k/a "the Jew," a/k/a "Jewish guy," the defendant, while holding himself out as a real estate broker, gave the name, date of birth, and social security number of "Mohammad Mir" to a mortgage broker in Rockland County, New York, and represented that "Mir" was an interested home buyer.

l.    On or about November 13, 2006, during a telephone call, MUKHTAR asked TAHIR ALI KHAN whether "Mir" was a citizen or green card holder.  KHAN responded: "He has nothing but if you want a copy of his citizenship or green card we will make it."  MUKHTAR responded:  "[B]ut we need it now, within a day or two, can you make it?" KHAN said that it would be not be a problem.

m.    On or about November 13, 2006, TAHIR ALI KHAN posted on a Yahoo website account a fake New York State driver's license in the name of "Mohammed Mir" and a fake permanent resident card in the name of "Imtiaz Ahmad," both containing the same photograph of the same individual.

n.    On or about December 6, 2006, CC-1 called MEHMOOD from Manhattan and informed MEHMOOD that he was sitting with a co-conspirator not named herein, talking about making identification documents, and that the co-conspirator had

8

pictures he could use to make a visa.

        o.   On or about February 2, 2007, MEHMOOD and
SYED SHAH a/k/a "Faisal," a/k/a "Chotu," a/k/a "Joji," the
defendants, discussed making an identification for "Diakhate"
[i.e., "Ibrahima Diakhate," a fraudulent identity used by the
defendants].  MEHMOOD stated that they needed a photograph of
someone who looks like he was born in 1970, and told a co-
conspirator to have NADEEM KHAN, the defendant, put his own
picture and sign as "Diakhate."

        p.   On or about February 9, 2007, OSCAR SANCHEZ,
a/k/a "Charsi," a/k/a "Bank of America," the defendant, who
worked at Bank of America in Manhattan, complained that a false
identification document MEHMOOD had given to him contained a 2008
issue date and a 2007 expiration date, and that MEHMOOD would get
SANCHEZ in trouble by making such mistakes.

        q.   On or about February 14, 2007, SHAH gave
PRADIPT SHARMA, a/k/a "the Citibank guy," the defendant, the
means of identification of various fraudulent identities to be
used to open bank accounts at a Citibank branch in Manhattan.
SHARMA told SHAH and MEHMOOD that he wanted forty more accounts
from them.

        r.   On or about February 15 and 16, 2007, SHARMA
used the names, dates of birth, social security numbers, and
driver's license identification numbers supplied to him by

MEHMOOD and SHAH to open bank accounts in fraudulent identities at a Citibank branch in Manhattan.

s.    On or about February 25, 2007, MUKHTAR asked TAHIR ALI KHAN about getting an "ID made for a guy." KHAN explained that a "real one" would cost "4,000 to 5,000," but if the identification was only going to be used to apply for "cards and stuff" and to open bank accounts, "that can be made right away" for "800."

t.    On or about February 27, 2007, MEHMOOD and SANCHEZ planned to meet so that MEHMOOD could give SANCHEZ the names, dates of birth, social security numbers, and driver's license identification numbers for fraudulent identities to be used in opening bank accounts at a Bank of America branch located in Manhattan.

u.    On or about March 2, 2007, QAISER QURESHI, a/k/a "Auntie," the defendant, told a customer that he could buy a social security card for $6,000, and a fake New York driver's license for $2,000, and that the customer needed to give her date of birth, fingerprint, and a "passport size" photograph of the person for whom the identification documents would be made.

v.    On or about March 5, 2007, QURESHI reported to TAHIR ALI KHAN, in a telephone call, that she had customers for a social security card and New York driver's license who were willing to pay half up front. KHAN told QURESHI to wait two

10

weeks before taking their money, because  "when we take
somebody's money . . . we have to deliver it."

w.   On or about April 9, 2007, SHAH told NADEEM
KHAN that he was waiting at home for a package to be delivered,
because if the package was taken back to the office, "you know we
don't have the ID" to pick it up.  The co-conspirator then
recounted how, a few years ago, "we made a fake ID" to pick up a
plasma television from the UPS store, since no one was home at
the time of delivery.

x.   On or about April 22, 2007, in a telephone
call, MEHMOOD asked ISHAQ to make him a "tax ID" for an address
in New Jersey.  ISHAQ agreed to make the tax identification
document.

y.   On or about May 28, 2007, MEHMOOD told SHAH
to "make [the] ID for Khurram" [i.e., "Khurram Asgharam," a
fraudulent identity used by the defendants], to be used to open a
bank account for "Khurram" through SANCHEZ.  SHAH stated that he
would "make" it that day.

z.   On or about June 2, 2007, MEHMOOD directed
NADEEM KHAN "to make two IDs" that he needed to give "to the guy
tomorrow," and NADEEM KHAN agreed to do so.  MEHMOOD said he
wanted to be present when NADEEM KHAN made the documents to avoid
any mistake.

aa.  On or about June 8, 2007, while discussing the production of a fake identification, QURESHI advised MEHMOOD where to go to take the photographs that would be used in making false identification documents.

bb.  On or about June 8, 2007, in a telephone call, TAHIR ALI KHAN gave BENSHIMON the name, social security number, and date of birth for "Malik Nawaz," stating that they could "make some money" with this one.

cc.  On or about June 10, 2007, BENSHIMON used the means of identification of "Malik Nawaz" to obtain "Nawaz's" credit report, and told TAHIR ALI KHAN: "Malik . . . is the best one I ever saw!  I was like shit I can do whatever I want with him."  KHAN responded: "[as] long as we are making money, my brother."

dd.  On or about June 19, 2007, TAHIR ALI KHAN disposed of evidence of criminal offense by throwing into his trash, in Alabama, a fake New York State driver's license in the name of "Ibrahima Diakhate," bearing the photograph of a co-conspirator.

ee.  On or about July 3, 2007, TAHIR ALI KHAN disposed of evidence of criminal offense by throwing into his trash, in Alabama, false identification documents including a fake New York State driver's license in the name of "Malik Shan" bearing the photograph of KHAN himself, and a fake New York State

driver's license in the name of "Ali Haiber" bearing the photograph of CC-1.

(Title 18, United States Code, Section 1028(f).)

COUNT TWO

(Production of False Identification Documents)

The Grand Jury further charges:

6.    From in or about January 2005 through in or about August 2007, in the Southern District of New York and elsewhere, TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali," a/k/a "Haji," a/k/a "Shan," ARIE BENSHIMON, a/k/a "the Jew,"  a/k/a "Jewish Guy," MUHAMMAD ISHAQ, a/k/a "Saqa," NADEEM KHAN, GHULAM MEHMOOD, a/k/a "Mama," a/k/a "Zafar," SHAHEEN MUKHTAR, a/k/a "Nick," QAISER QURESHI, a/k/a "Auntie," OSCAR SANCHEZ, a/k/a "Charsi," a/k/a "Bank of America," SYED SHAH a/k/a "Faisal," a/k/a "Chotu," a/k/a "Joji," and PRADIPT SHARMA, a/k/a "the CitiBank guy," the defendants, and others known and unknown, unlawfully, willfully and knowingly did produce and attempt to produce in and affecting interstate and foreign commerce, without lawful authority, identification documents, authentication features, and false identification documents, to wit, TAHIR ALI KHAN, BENSHIMON, ISHAQ, NADEEM KHAN, MEHMOOD, MUKHTAR, QURESHI, SANCHEZ, SHAH and SHARMA produced fake driver's licenses, permanent resident cards, social security cards, tax identification documents, and other false identification documents.

13

(Title 18, United States Code, Sections 1028(a)(1),
1028(f) and 2.)

COUNT THREE

(Transfer, Possession and Use of
Means of Identification to Commit other Crimes)

The Grand Jury further charges:

7.    From in or about January 2005 through in or about
August 2007, in the Southern District of New York and elsewhere,
TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali," a/k/a "Haji,"
a/k/a "Shan," ARIE BENSHIMON, a/k/a "the Jew," a/k/a "Jewish
Guy," MUHAMMAD ISHAQ, a/k/a "Saqa," NADEEM KHAN, GHULAM MEHMOOD,
a/k/a "Mama," a/k/a "Zafar," SHAHEEN MUKHTAR, a/k/a "Nick,"
QAISER QURESHI, a/k/a "Auntie," OSCAR SANCHEZ, a/k/a "Charsi,"
a/k/a "Bank of America," SYED SHAH a/k/a "Faisal," a/k/a "Chotu,"
a/k/a "Joji," and PRADIPT SHARMA, a/k/a "the Citibank guy," the
defendants, and others known and unknown, unlawfully, willfully
and knowingly did transfer, possess and use, and attempt to
transfer, possess and use, in and affecting interstate and
foreign commerce, without lawful authority, means of
identification of other persons with intent to commit, and to aid
and abet, and in connection with, unlawful activity that
constitutes a violation of Federal law, to wit, the violations
charged in Counts Six through Ten of this Indictment, and as a
result, did obtain and attempt to obtain things of value
aggregating $1,000 and more during a one-year period, to wit,

14

TAHIR ALI KHAN, BENSHIMON, ISHAQ, NADEEM KHAN, MEHMOOD, MUKHTAR,
QURESHI, SANCHEZ, SHAH and SHARMA possessed, used, and
transferred various means of identification -- including names,
social security numbers, dates of birth, alien registration
numbers, driver's license identification numbers, and taxpayer
identification numbers -- of fraudulent identities to obtain
millions of dollars through fraud.

> (Title 18, United States Code, Sections 1028(a)(7),
> (b)(1)(A)&(D), (c)(3)(A), (f) and 2.)

## COUNT FOUR

### (Aggravated Identity Theft)

The Grand Jury further charges:

8.    From in or about January 2005, up to and including
in or about August 2007, in the Southern District of New York and
elsewhere, TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali,"
a/k/a "Haji," a/k/a "Shan," ARIE BENSHIMON, a/k/a "the Jew,"
a/k/a "Jewish Guy," MUHAMMAD ISHAQ, a/k/a "Saqa," NADEEM KHAN,
GHULAM MEHMOOD, a/k/a "Mama," a/k/a "Zafar," SHAHEEN MUKHTAR,
a/k/a "Nick," QAISER QURESHI, a/k/a "Auntie," OSCAR SANCHEZ,
a/k/a "Charsi," a/k/a "Bank of America," SYED SHAH a/k/a
"Faisal," a/k/a "Chotu," a/k/a "Joji," and PRADIPT SHARMA, a/k/a
"the Citibank guy," the defendants, unlawfully, willfully, and
knowingly did transfer, possess, and use, without lawful
authority, a means of identification of another person, to wit,
names, social security numbers, dates of birth, alien

registration numbers, driver's license identification numbers, and taxpayer identification numbers, during and in relation to a felony enumerated in Title 18, United States Code, Section 1028A(c), to wit, violations of Title 18, United States Code, Sections 1029, 1343, and 1344.

(Title 18, United States Code, Sections 1028A(a)(1) & 2.)

COUNT FIVE

(Conspiracy to Commit Access Device Fraud)

The Grand Jury further charges:

9.    From in or about January 2005 through in or about August 2007, in the Southern District of New York and elsewhere, TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali," a/k/a "Haji," a/k/a "Shan," FAYYAZ AHMED, NAVEED ALI BHINDAR, a/k/a "Sheikh," MUHAMMAD ISHAQ, a/k/a "Saqa," GHULAM MEHMOOD, a/k/a "Mama," a/k/a "Zafar," QAISER QURESHI, a/k/a "Auntie," OSCAR SANCHEZ, a/k/a "Charsi," a/k/a "Bank of America," and SYED SHAH a/k/a "Faisal," a/k/a "Chotu," a/k/a "Joji," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense under Title 18, United States Code, Section 1029(a).

10.    It was a part and object of the conspiracy that TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali," a/k/a "Haji," a/k/a "Shan," FAYYAZ AHMED, NAVEED ALI BHINDAR, a/k/a "Sheikh,"

16

MUHAMMAD ISHAQ, a/k/a "Saqa," GHULAM MEHMOOD, a/k/a "Mama," a/k/a "Zafar," QAISER QURESHI, a/k/a "Auntie," OSCAR SANCHEZ, a/k/a "Charsi," a/k/a "Bank of America," and SYED SHAH a/k/a "Faisal," a/k/a "Chotu," a/k/a "Joji," the defendants, and others known and unknown, unlawfully, willfully, and knowingly, and with intent to defraud, would and did traffic in and use one and more unauthorized access devices during a one-year period, and by such conduct obtained things of value aggregating $1,000 and more during that period, in violation of Title 18, United States Code, Section 1029(a)(2).

<u>The Means and Methods of the Conspiracy</u>

11. Among the means and methods by which TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali," a/k/a "Haji," a/k/a "Shan," FAYYAZ AHMED, NAVEED ALI BHINDAR, a/k/a "Sheikh," MUHAMMAD ISHAQ, a/k/a "Saqa," GHULAM MEHMOOD, a/k/a "Mama," a/k/a "Zafar," QAISER QURESHI, a/k/a "Auntie," OSCAR SANCHEZ, a/k/a "Charsi," a/k/a "Bank of America," and SYED SHAH a/k/a "Faisal," a/k/a "Chotu," a/k/a "Joji," the defendants, and their co-conspirators, would and did carry out the conspiracy were the following:

a. The defendants and their co-conspirators applied for credit card accounts in the names of fraudulent identities, which they referred to as "chickens," and designated certain physical addresses as the mailing addresses for the

"chicken" credit card accounts;

        b.   The defendants and their co-conspirators regularly monitored the mail at those addresses for incoming credit cards and credit card account statements in the "chicken" names;

        c.   The defendants and their co-conspirators used the "chicken" credit cards to pay bills, make purchases, and obtain cash advances;

        d.   The defendants and their co-conspirators impersonated "chickens" when calling credit card companies to inquire about particular credit card accounts;

        e.   The defendants and their co-conspirators paid some bills on the "chicken" credit card accounts in order to increase the credit ratings for those "chicken" identities;

        f.   The defendants and their co-conspirators colluded with merchants to charge phony expenses on the "chicken" credit cards, and then share the cash reimbursements that the collusive merchants received from the credit card companies;

        g.   The defendants and their co-conspirators conspired to charge the maximum amount, or above the maximum amount, allowed on credit cards in "chicken" names and then to default on the bill.

<u>Overt Acts</u>

12.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about January 12, 2005, FAYYAZ AHMED, the defendant, purchased more than $19,000 in home appliances at a Home Depot store in New Jersey, using a credit card in the name of "Mumtaz Lodhi."

b.   On or about January 26, 2005, AHMED attempted to use a credit card in the name of "Mumtaz Lodhi" to purchase $10,000 in gift cards from a Lowe's store in New Jersey, and showed the cashier a fake driver's license in the name of "Mumtaz Lodhi" at the time of the purchase.

c.   On or about August 24, 2006, in Rockland County, New York, CC-1 discarded in his trash partially shredded credit cards in the names of fraudulent identities used by the defendants, including "Khaki Jan" and "Mansoor Alhussaini."

d.   On or about October 10, 2006, MUHAMMAD ISHAQ, a/k/a "Saqa," the defendant, called HSBC card services, identified himself as "Kadir Ahmed," and paid a credit card bill for "Kadir Ahmed" over the phone.

e.   On or about October 11, 2006, SYED SHAH a/k/a "Faisal," a/k/a "Chotu," a/k/a "Joji," the defendant, attempted

to use a Bank of America credit card in the name of "Kadir Ahmed" to make purchases.  The co-conspirator later called Bank of America and impersonated "Kadir Ahmed" to obtain account information for that card.

      f.   On or about October 13, 2006, GHULAM MEHMOOD, a/k/a "Mama," a/k/a "Zafar," the defendant, gave OSCAR SANCHEZ, a/k/a "Charsi," a/k/a "Bank of America," the defendant, the name and credit card account information for a card in the name of "Kadir Ahmed."  Later that day, SANCHEZ used the "Kadir Ahmed" credit card to pay his telephone bill on-line.

      g.   On or about October 14, 2006, SHAH telephoned US Airways Credit Services and impersonated "Kadir Ahmed" to obtain account information for a credit card account in the name of "Kadir Ahmed."

      h.   On or about October 16, 2006, MEHMOOD asked SANCHEZ to check the account information for two credit cards that SANCHEZ had opened for the "Imtiaz guy."

      i.   On or about February 8, 2007, TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a, "Ali," a/k/a "Haji," a/k/a "Shan," the defendant, charged expenses on a credit card in the name "Mohammad Mir," at the auto business of BASHARAT JARRAL, a/k/a "Alex," the defendant.  JARRAL informed KHAN later that day that the charges had been rejected because, according to the credit card company, "the guy whose card it is" was disputing the

charge.  KHAN responded: "[H]ow can this guy dispute? . . . We are the guy."  KHAN then told JARRAL he would get him a copy of the license for "Mir," to send to the credit card company to substantiate the charge.

       j.  On or about February 9, 2007, TAHIR ALI KHAN called MEHMOOD to get a copy of the "Mir" license.  MEHMOOD, in turn, called a co-conspirator, asking for the "Mir ID," and explaining that there were a "card problem," so a copy had to be mailed.

       k.  In or about February 2007, NAVEED ALI BHINDAR, a/k/a "Sheikh," the defendant, permitted his store to be used as a mailing address for fraudulent credit cards, and notified a co-conspirator, on or about February 21, 2007 that mail had arrived there in the name "Amar Mirza" and that it seemed like there were cards inside.  SHAH stated that he would come by to look at them.

       l.  On or about March 4, 2007, MEHMOOD made purchases at a P.C. Richards store in Brooklyn using a credit card in the name of "Hashmi Patel."

       m.  On or about March 15, 2007, SHAH made purchases at a Macy's store in Brooklyn using credit cards in the name of "Ibrahima Diakhate."

       n.  On or about March 17, 2007, CC-1 called the Chase Freedom Credit Card Services and impersonated "Ibrahima

Diakhate" to obtain account information regarding an account in that name.

o.   On or about April 20, 2007, MEHMOOD and ISHAQ discussed what address MEHMOOD should use for the Bank of America credit cards he was applying for, and ISHAQ advised him to use BHINDAR's address.

p.   On or about May 15, 2007, QAISER QURESHI, a/k/a "Auntie," the defendant, attempted to recruit an individual to join the conspiracy, telling the individual that MEHMOOD and TAHIR ALI KHAN would make fraudulent identifications, open credit card accounts, and that KHAN would then tell the individual how to use the credit cards to "build good credit."

q.   On or about May 15, 2007, SHAH told MEHMOOD that Chase card services had asked for the social security number of "Velikov" [i.e., "Dimo Velikov," a fraudulent identity used by the defendants].  MEHMOOD gave SHAH the social security number, date of birth, and mother's maiden name for SHAH to use in calling back the credit card company.

r.   On or about May 21, 2007, ISHAQ purchased approximately $20,000 worth of watches at various store in New Jersey, using credit cards in the names of "Amin Hussain," "Jameel Choudhrey," and "Mohammad Iqbab."

s.   On or about June 5, 2007, MEHMOOD asked ISHAQ what credit cards he should get for "my chicken," and ISHAQ

advised him of the various credit card companies to which he
should apply.

      t.  On or about June 8, 2007, TAHIR ALI KHAN and
MEHMOOD conspired about how to open a credit card in a woman's
name, "Maria," since they were both men.  KHAN stated that his
wife could call the credit card company as "Maria."

      u.  On or about June 16, 2007, MEHMOOD told ISHAQ
that he had applied for cards for a "chicken" and received more
than expected, including a "Hilton" for $12,000, a "Citi Premier"
for $11,000, a small one for $3,000, and a "business" for $6,000.

      v.  On or about June 18, 2007, CC-1 made
purchases at a Home Depot store in Rockland County, New York,
using a credit card in the name of "Malik Nawaz."

      w.  On or about July 17, 2007, QURESHI and TAHIR
ALI KHAN conspired to charge credit cards in the name of "Nawaz"
[i.e., "Malik Nawaz," a fraudulent identity used by the
defendants] at the store of a collusive merchant.  QURESHI asked
KHAN whether he preferred to get the money or items from the
collusive merchant, and KHAN replied if they got the items, they
could sell it themselves.

      (Title 18, United States Code, Section 1029(b)(2).)

COUNT SIX

(Access Device Fraud)

The Grand Jury further charges:

13.  From in or about January 2005 through in or about August 2007, in the Southern District of New York and elsewhere, TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali," a/k/a "Haji," a/k/a "Shan," NAVEED ALI BHINDAR, a/k/a "Sheikh," MUHAMMAD ISHAQ, a/k/a "Saqa," GHULAM MEHMOOD, a/k/a "Mama," a/k/a "Zafar," QAISER QURESHI, a/k/a "Auntie," OSCAR SANCHEZ, a/k/a "Charsi," a/k/a "Bank of America," and SYED SHAH, a/k/a "Faisal," a/k/a "Chotu," a/k/a "Joji," the defendants, and others known and unknown, unlawfully, willfully, and knowingly, and with intent to defraud, did traffic in and use one and more unauthorized access devices during a one-year period, and by such conduct obtained things of value aggregating $1,000 and more during that period, to wit, TAHIR ALI KHAN, BHINDAR, ISHAQ, MEHMOOD, QURESHI, SANCHEZ, and SHAH fraudulently obtained money and tangible goods by applying for and using credit cards in names of fraudulent identities.

(Title 18, United States Code, Sections 1029(a)(2) and 2.)

COUNT SEVEN

(Conspiracy to Commit Bank Fraud)

The Grand Jury further charges:

14.   From in or about January 2005, up to and including in or about August 2007, in the Southern District of New York and elsewhere, TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali," a/k/a "Haji," a/k/a "Shan," FAYYAZ AHMED, MUHAMMAD ISHAQ, a/k/a "Saqa," GHULAM MEHMOOD, a/k/a "Mama," a/k/a "Zafar," OSCAR SANCHEZ, a/k/a "Charsi," a/k/a "Bank of America," SYED SHAH, a/k/a "Faisal," a/k/a "Chotu," a/k/a "Joji," and PRADIPT SHARMA, a/k/a "the Citibank guy," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit bank fraud, as that term is defined in Title 18, United States Code, Section 1344.

15.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about January 8, 2005, FAYYAZ AHMED, the defendant, at the direction of TAHIR ALI KHAN, a/k/a "Waheed Khan," a/k/a "Ali," a/k/a/ "Haji," a/k/a "Shan," the defendant, used a fraudulent identity in the name of "Munir Lodhi" to obtain a home equity loan from Washington Mutual Bank in the amount of